**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 30, 2025**

No. 20-1107 (consolidated)

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLEAN FUELS ALLIANCE AMERICA,

*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY AND LEE M. ZELDIN,

*Respondents.*

On Petition for Review of Final Agency Action
of the Environmental Protection Agency

**PETITIONERS' EMERGENCY MOTION FOR ABEYANCE**

Bryan Killian
Douglas A. Hastings
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
(202) 739-3000
bryan.killian@morganlewis.com

*Counsel for Clean Fuels Alliance America*

David M. Lehn
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
(202) 237-2727
dlehn@bsfllp.com

*Counsel for Growth Energy*

September 22, 2025

Petitioners—Clean Fuels Alliance America and Growth Energy—move the Court to hold this case in abeyance in light of recent events, including by removing the upcoming oral argument from the calendar.

The sole remaining issue in this consolidated appeal is petitioners' challenge to EPA's policy of refusing to account for previously granted but unaccounted-for retroactive small-refinery exemptions ("SREs") when establishing annual percentage standards under the Renewable Fuel Standard ("RFS") program. As explained further below, two recent steps by EPA may have significant legal or practical effects on this case. First, EPA adjudicated 175 SRE petitions for 2016-2024, granting 140 SREs for 2018-2024 worth more than 5 billion RINs while returning to the exempted refineries expired RINs for the pre-2023 SREs. Second, EPA proposed to reallocate exempt obligations for some or all of the 2023-2024 SREs it granted and the 2025 SREs it projects it will grant. These actions endorse the programmatic logic underlying petitioners' claim here and, together, they would preempt much (though not all) of the need for the reallocation of past SREs to date that plaintiffs seek through this lawsuit.

Because oral argument is scheduled for September 30, 2025, petitioners file this motion on an emergency basis and request that the Court act on it as soon as possible and no later than September 29, 2025.

The other parties oppose this motion.

1

# BACKGROUND

A. Through the Clean Air Act, Congress created the Renewable Fuel Standard ("RFS") program "to force the market" to "replace" fossil fuel with "greater and greater volumes of renewable fuel each year." *Americans for Clean Energy v. EPA*, 864 F.3d 691, 696-697, 710 (D.C. Cir. 2017). Each year, there is a volume of renewable fuel that must be used nationally. Initially, these required volumes were specified by the Act. For calendar years after 2022, however, the Act directs EPA to determine—or *set*—the required volumes "based on" EPA's "analysis" of an array of statutorily enumerated topics. 42 U.S.C. §7545(*o*)(2)(B)(ii).

EPA's "core mandate" under the Act is "to ensure the … annual renewable fuel volumes are met." *Wynnewood Refining Co., LLC v. EPA*, 77 F.4th 767, 779 (D.C. Cir. 2023); *see* §7545(o)(2)(A)(i), (2)(A)(iii)(I) & (3)(B)(i). EPA principally "fulfills that mandate by translating the annual volume requirements into percentage standards," which "represent the percentage of transportation fuel introduced into commerce that must consist of renewable fuel." *Americans for Clean Energy*, 864 F.3d at 699; *see also* §7545(*o*)(3)(B).

EPA may "exempt" individual small refineries for a given year at any time on petition from the individual refinery. §7545(*o*)(9)(B). EPA often grants these small-refinery exemptions—or "SREs"—after it has set the percentage standards

2

for the exempted year, in which case they are sometimes called "retroactive SREs." §7545(*o*)(9)(B); *see Sinclair Wyoming Refining Co. LLC v. EPA*, 114 F.4th 693, 701 (D.C. Cir. 2024) (hereinafter "*Sinclair-Exemptions*"); *Sinclair Wyoming Refining Co. LLC v. EPA*, 101 F.4th 871, 881, 890-891 (D.C. Cir. 2024) (hereinafter "*Sinclair-Reset*").

Since 2020, EPA's policy has been to "reallocate" exempt obligations to non-exempt obligated parties to a limited extent. When establishing the percentage standards for a given compliance year, EPA will increase the percentage standards to reallocate for the SREs EPA has *already* granted *for that year* and for the SREs EPA "projects" to grant retroactively *for that year* (i.e., the ones it anticipates granting for that year after it has finalized that year's percentage standards). *See Sinclair-Reset*, 101 F.4th at 890-891. But EPA's policy has been to refuse to reallocate *past retroactive* exempt obligations that were not previously reallocated through any projection of SREs at the time that it established the relevant year's percentage standards. In fact, EPA has granted SREs for many years covering billions of gallons of renewable fuel but never reallocated those obligations. *See, e.g.*, Reply Br.14. And, as petitioners explained, EPA could again grant SREs retroactively without reallocating the associated obligations under its current policy. Opening Br.38.

3

In this case, petitioners challenge EPA's policy of refusing to reallocate *past retroactive* exempt obligations that were not accounted for in prior RFS standards. Petitioners argue that this policy contravenes EPA's "core mandate" to annually establish percentage standards reasonably designed to "ensure" that that year's volume requirements will be met. The mechanism by which this happens is straightforward. When EPA grants an SRE retroactively, it relieves the exempted obligated party of the duty to retire RINs, thereby reducing the amount of renewable fuel that must be blended to achieve compliance. This happens even if the SRE is granted after the covered compliance year is over: by relieving the obligated party of the duty to retire RINs, the SRE inflates the bank of RINs at the time the SRE is granted, allowing those RINs to displace renewable fuel to meet *that year's* requirements. Therefore, if EPA knows that the existing RIN bank is inflated from prior SREs when it establishes percentage standards for a given year, it also knows that those standards will not require obligated parties to use the required volume of renewable fuel unless it reallocates the previously exempted obligations. Consequently, if EPA refuses to reallocate those exempted obligations, EPA violates its "ensure" duty and acts arbitrarily. *See, e.g.*, Reply Br. 15-16, 21. The challenged policy is therefore unlawful because it compels EPA to violate its "ensure" duty and to act arbitrarily each time it establishes annual RFS percentage standards.

4

B.   In June 2025, EPA proposed RFS volume requirements for 2026 and 2027.  *Renewable Fuel Standard (RFS) Program: Standards for 2026 and 2027, Partial Waiver of 2025 Cellulosic Biofuel Volume Requirement, and Other Changes*, 90 Fed. Reg. 25,784 (June 17, 2025) (hereinafter "Set 2 Proposal").  The Set 2 Proposal would increase the 2026 and 2027 standards to account for SREs "project[ed]" to be granted "for the 2026 and 2027 compliance years only," and "not" to account for "the potential grant of SREs for prior compliance years."  *Id.* at 25,833:3.

C.   In August 2025, EPA adjudicated 175 pending SRE petitions for compliance years 2016-2024.  *Notice of August 2025 Decisions on Petitions for Small Refinery Exemptions Under the Renewable Fuel Standard Program*, 90 Fed. Reg. 41,829 (Aug. 27, 2025); *August 2025 Decisions on Petitions for RFS Small Refinery Exemptions* (Aug. 2025) (hereinafter "2025 SRE Decisions").[1]  EPA fully or partially granted 97 SREs for 2018-2022, exempting a total of 3.96 billion RINs. 2025 SRE Decisions at 1.  EPA fully or partially granted 43 SREs for 2023-2024, exempting a total of 1.39 billion RINs.  *Ibid.*  EPA fully denied 35 pending SRE petitions, including the two pending for 2016 and 2017.  *Ibid.*

---

[1] https://www.epa.gov/system/files/documents/2025-08/420r25010.pdf.

5

None of the 2018-2024 SREs EPA granted had been accounted for in prior RFS standards. Some of the exempted refineries had previously retired RINs to meet their now-exempt past RFS obligations, and EPA decided to "return the corresponding RINs retired by those small refineries for each compliance year." 2025 SRE Decisions at 20. EPA explained that "[p]re-2023 vintage RINs returned to small refineries will be 'expired,' meaning they cannot be used to meet future RFS compliance obligations. … However, 2023 RINs returned to small refineries will be available for trading or compliance with open 2024 RFS obligations." *Ibid.* In other words, to the extent that small refineries that received the 2018-2022 SREs had previously retired RINs to meet those years' RFS obligations, those SREs would not inflate the RIN bank because they would not make any more RINs available for compliance now than there would have been without those SREs, but the 2023-2024 SREs would inflate the RIN bank now by making valid RINs available for compliance. Although EPA had occasionally replaced expired RINs with current-year RINs when granting an SRE long after the compliance year was over, EPA expressly declined to take that approach in the 2025 SRE Decisions. EPA explained that doing so would create a "sudden and significant influx of RINs"—more than 3 billion of them—which would "result in decreased RIN prices, and in turn decreased future investments in renewable fuel production." 2025 SRE Decisions at 21-22, 26.

Thus, EPA acknowledged—as this Court has put it—that unaccounted-for SREs "impede attainment of overall applicable volumes" prospectively, *American Fuel*, 937 F.3d at 571, 588, even when the SREs are for prior compliance years.

Some refineries have already petitioned this Court to review the 2025 SRE Decisions. *See REH Co. LLC v. EPA*, No. 25-1180 (D.C. Cir.) (consolidated). The deadline to petition is October 27, 2025. *See* 42 U.S.C. §7607(b)(1) ("Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register ….").

D.  Last week, EPA issued a supplemental proposal for the 2026 and 2027 RFS standards. *Renewable Fuel Standard (RFS) Program: Standards for 2026 and 2027, Partial Waiver of 2025 Cellulosic Biofuel Volume Requirement, and Other Changes; Supplemental Notice of Proposed Rulemaking*, 90 Fed. Reg. 45,007 (Sept. 18, 2025) (hereinafter "Supplemental Set 2 Proposal"). EPA proposed requiring additional volumes in 2026 and 2027 representing either "complete (100 percent) reallocation [or] 50 percent reallocation for SREs granted in full or in part [in August 2025] for 2023 and 2024, as well as those projected to be granted for 2025, as part of the ongoing RFS [Set 2] rulemaking" for 2026 and 2027. *Id.* at 45,007:3. This reallocation would apply to about 2.18 billion RINs or 1.09 billion RINs, respectively. *Id.* at 45,009:3. Additionally, EPA requested

7

comment on reallocating 75 percent, 25 percent, and 0 percent of the SREs it granted for 2023-2025. *Id.* at 45,007:3.

EPA explained the need for the proposed reallocation:

The August 2025 SRE Decisions Action exempted significant volumes of gasoline and diesel for the 2023 and 2024 compliance years, resulting in an increased number of RINs available for obligated parties to use for compliance with their RFS obligations. We expect additional exemptions will be granted for the 2025 compliance year as well. These RINs represent renewable fuel produced and used in 2023–2025 that obligated parties will no longer need to retire for compliance because of the relieved obligations from SRE exemptions. The availability of these RINs—and the ability for obligated parties to use them to comply with their RFS obligations in lieu of RINs generated for renewable fuel produced and used in 2026 and 2027—could reduce RIN demand and RIN prices in future years and may ultimately result in the market failing to produce the volume of renewable fuel anticipated by the volume requirements in the Set 2 proposal. … While the exemptions granted for these years have no impact on the volume of renewable fuel actually produced and used in 2023 and 2024 since those years are in the past, they directly increase the supply of RINs available for other obligated parties to use for compliance. As a result, obligated parties will be able to use the RFS program's carryover RIN provisions to roll these RINs forward to the 2025 compliance year and beyond. While there may be some impact from the increased number of carryover RINs as a result of the 2023–2025 SREs on renewable fuel production and use in 2025, only a few months remain in this year. Instead, the effect of these RINs is likely to be most acute in 2026 and 2027 when obligated parties could choose to use carryover RINs to comply with their 2026 and 2027 RVOs in lieu of acquiring renewable fuel produced in those years, thereby reducing the demand for renewable fuel production and use in those years. Thus, failure to mitigate the market impacts of the increased number of carryover RINs due to the 2023–2025 SREs could result in a decrease in demand for renewable fuel produced in 2026 and 2027. … The resulting influx of additional RINs in the market [from the SREs] could have a deleterious effect on current and

8

> proposed volume requirements without corrective action to address the increased number of carryover RINs due to the 2023–2025 SREs.

90 Fed. Reg. at 45,010:1-3.

Thus, EPA acknowledged and endorsed the programmatic logic underlying petitioners' claim in this case. However, EPA did not invoke its "ensure" mandate as legal authorization for the proposed reallocation. Instead, EPA asserted that the legal authorization came from the Set power, i.e., the power to establish volume requirements for 2023 and later years. 90 Fed. Reg. at 45,011:2. EPA also stated: "In the future, we intend to continue our policy of prospectively accounting for exempted volumes of gasoline and diesel such that there will be no need to include SRE reallocation volumes in this manner again." *Id.* at 45,013:2.

EPA "expects it will finalize" the Set 2 Rule establishing RFS standards for 2026-2027, including the proposed reallocation in the Supplemental Set 2 Proposal, "this winter 2025-2026." Joint Status Report at 3, ECF #15, *Clean Fuels Alliance America* v. *Zeldin*, No. 1:24-cv-03572 (D.D.C. Sept. 19, 2025).

## DISCUSSION

The 2025 SRE Decisions and Supplemental Set 2 Proposal could have significant legal and practical implications for this lawsuit.

First, as described above, the Supplemental Set 2 Proposal rests on the programmatic logic underlying petitioners' claim here, even though the

9

Supplemental Set 2 Proposal invokes the Set power instead of the "ensure" mandate at issue here.

Second, the 2025 SRE Decisions and the Supplemental Set 2 Proposal together preempt much, though not all, of the need for the reallocation of past SREs to date that is sought through this lawsuit. To the extent that the 2025 SRE Decisions returned *expired* RINs for the 2018-2022 SREs, there is no occasion for any reallocation for those SREs. Insofar as the Supplemental Set 2 Proposal would reallocate 100% of the 2023-2025 exempted obligations, it would accomplish what this lawsuit would accomplish for those years' SREs. All told, these EPA actions would mitigate any "renewable-fuel shortfall" caused by the 2018-2025 SREs, *American Fuel & Petrochemical Manufacturers v. EPA*, 937 F.3d 559, 571, 588 (D.C. Cir. 2019), by approximately 6.12 billion gallons, *see* 2025 SRE Decisions at 1 (SREs for 2016-2024 cover 5.34 billion RINs); 90 Fed. Reg. at 45,009:2 (projecting SREs for 2025 covering 0.78 billion RINs). And, as noted above, it is EPA's hope, if not expectation, that all *future* retroactive exemptions will be reallocated pursuant to EPA's policy of projecting such SREs when establishing volume requirements for each future year.

Of course, these results are not guaranteed. Judicial review of the 2025 SRE Decisions could result in EPA's granting one or more of the dozens of 2016-2025 SRE petitions it denied fully or partially, or having to allow exempted refineries to

10

replace their returned expired 2018-2022 RINs with current-year RINs. EPA could finalize the Set 2 Rule with less than 100% reallocation of the 2023-2025 SREs—all the way down to 0%. And judicial review of the Set 2 Rule could result in EPA lowering or raising the final reallocation percentage.

Consequently, in the interest of judicial economy and orderliness, petitioners ask the Court to hold this case in abeyance pending finalization of the Set 2 Rule. At that time, the parties will have more information about the scope of the litigation challenging the 2025 SRE Decision and about the terms of the Set 2 Rule, and therefore they will be better positioned to assess the implications of those actions for this lawsuit. Petitioners propose that the parties file motions to govern the proceedings in this case within 30 days of the publication of the final Set 2 Rule in the Federal Register. Should the Court grant the requested abeyance, it should remove from its calendar the oral argument scheduled for September 30, 2025.

## CONCLUSION

The Court should grant the emergency motion to hold this case in abeyance pending finalization of the Set 2 Rule, and direct the parties to file motions to govern the proceedings in this case within 30 days of the publication of the final Set 2 Rule in the Federal Register.

|  | Respectfully submitted, |
|---|---|
| /s/ Bryan Killian | /s/ David M. Lehn |
| Bryan Killian | David M. Lehn |
| Douglas A. Hastings | BOIES SCHILLER FLEXNER LLP |
| MORGAN, LEWIS & BOCKIUS LLP | 1401 New York Avenue NW |
| 1111 Pennsylvania Avenue NW | Washington, DC 20005 |
| Washington, DC 20004 | (202) 237-2727 |
| (202) 739-3000 | dlehn@bsfllp.com |
| bryan.killian@morganlewis.com | |
|  | *Counsel for Growth Energy* |
| *Counsel for Clean Fuels Alliance America* | |

September 22, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies:

1. This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,641 words, excluding the exempted portions, as provided in Federal Rule of Appellate Procedure 32(f). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2. This motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(a)(5)-(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ David M. Lehn
DAVID M. LEHN

September 22, 2025

## CERTIFICATE OF SERVICE

I certify that on September 22, 2025, I filed a copy of this motion using the Court's case management electronic case filing system, which will automatically serve notice of the filing on registered users of that system.

/s/ David M. Lehn
DAVID M. LEHN

September 22, 2025