**ORAL ARGUMENT SCHEDULED SEPTEMBER 30, 2025**

Case No. 20-1107 and Consolidated Cases

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE D.C. CIRCUIT**

---

CLEAN FUELS ALLIANCE AMERICA,
*Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
*Respondents*.

---

On Petition for Review of Actions by Environmental Protection Agency

---

**RESPONDENTS' RESPONSE TO PETITIONERS' MOTION FOR
ABEYANCE**

---

Dated: September 25, 2025

ADAM R.F. GUSTAFSON
   *Acting Assistant Attorney General*

ROBERT N. STANDER
   *Deputy Assistant Attorney General*

*Of Counsel*:
ROSEMARY KABAN
  U.S. Environmental Protection
Agency
Office of General Counsel

KIMERE J. KIMBALL
   *Trial Attorney*
   U.S. Department of Justice
   P.O. Box 7611
   Washington, DC 20044
   (202) 514-2285
   Kimere.Kimball@usdoj.gov

   *Counsel for Respondents*

## INTRODUCTION

Petitioners' request for an abeyance simply underscores how truly nebulous their claim is and how untethered it is to the 2020 Rule—the *only* agency action this Court has jurisdiction to consider in this litigation.  Petitioners now claim this case should be put on hold indefinitely while EPA completes a new rulemaking on annual volumes—the third such rulemaking since the 2020 Rule.  But the issues addressed in that new rulemaking did not even occur until *years* after the rulemaking at issue in this litigation was completed.  Petitioners seek to abate proceedings in this case while EPA decides how newly available RINs from 2023 and 2024, and projected RINs from 2025, should affect volumes for 2026 and 2027 that EPA is setting using an entirely different statutory authority than any used in the 2020 Rule.

The Court should deny this request first and foremost because the claims in this case are already moot.  The *only* hook Petitioners have to the 2020 Rule is the percentage standard formula first considered in that rulemaking and ultimately reopened, reproprosed, and refinalized in a subsequent superseding rule.  Because the issue of the validity and propriety of that formula has long since been decided, the Court should simply dismiss this case.

But regardless, as Petitioners themselves make clear, the 2026-2027 rule will not moot this case.  EPA's consideration of newly available RINs as one of the

multitude of factors it must consider in setting the 2026 and 2027 volumes has no

bearing on the ultimate question at issue in this litigation:  whether EPA was

required to amend its annual percentage standard formula to retroactively to

account for small refinery exemptions from long-past years.  EPA has not proposed

to do that in the 2026-2027 Rule and thus there is no indication that the final rule

could make this matter anymore moot than it already is.  Moreover, leaving this

case lurking for Petitioners to revive yet again on an even more stale record

encourages the opposite of judicial efficiency.  The Court should deny Petitioners'

request.

## BACKGROUND

This action concerns Petitioners' challenge to EPA's 2020 Rule that set

volumes and percentage standards for the calendar year 2020 and adopted a new

percentage standard formula.

In the RFS program, Congress set specific total national volumes through

2022 of different types of renewable fuel that refiners and importers ("obligated

parties") were required to incorporate into transportation fuel.  42 U.S.C. §

7545(o)(2)(B)(i).  Congress then told EPA to convert each year's statutory

volumes into the percentage of each individual obligated party's fuel used in

transportation that must be renewable for that specific year.  *Id*. § 7545(o)(3).  At a

general level, EPA does that by using a regulatory formula that takes the target

volume of renewable fuel for the year and divides it by that year's projected volume of gasoline and diesel fuel used in transportation.  40 C.F.R. § 80.1405(c).

Obligated parties demonstrate compliance with the percentage standard by retiring renewable fuel credits called RINs ("renewable identification numbers") that they purchase from renewable fuel producers.  42 U.S.C. § 7545(o)(5); 40 C.F.R. § 80.1427(a)(1).  Each RIN is valid to satisfy renewable fuel obligations both for the year in which it is produced and the following year.  42 U.S.C. § 7545(o)(5)(C); 40 C.F.R. § 80.1427(a)(6).

Separately, the Act exempts small refineries that meet certain criteria from the RFS program, and allows small refineries to petition for these exemptions "at any time," including even years after the compliance deadline.  42 U.S.C. § 7545(o)(9)(B).  Because small refineries can be exempted from the program, failing to remove the volume of fuel they produce that is used in transportation from the denominator of the percentage standard formula inflates the denominator such that the volume of renewable fuel each obligated party is required to incorporate does not add up to the target volume for the year.

Accordingly, prior to 2020, EPA subtracted the amount of gasoline and diesel from small refineries that had received exemptions for that volume year as of the time of the annual rulemaking setting the percentages.  *See, e.g.,* 80 Fed.

Reg. 77420, 77511 (Dec. 14, 2015).  But small refinery exemptions frequently were both requested and granted after the percentage standards had already been set, so the formula still had an inflated denominator.  85 Fed. Reg. 7016, 7050 (Feb. 6, 2020).

In 2020, EPA first revised the percentage standard formula to subtract from the denominator both small refinery exemptions for that volume year that had actually been granted at the time of the rulemaking and the volume of exemptions EPA *expects* to grant for that volume year to try to address this issue.  85 Fed. Reg. 7016, 7049-53 (Feb. 6, 2020).  That formula was challenged in this litigation and ultimately this case was placed in abeyance while EPA reconsidered the rule.

In the subsequent rulemaking, EPA explicitly reopened consideration of the percentage standard formula, took comment on it, reconsidered it, and ultimately re-adopted the same formula in a superseding rule and applied that formula to volumes for 2020, 2021, and 2022.  87 Fed. Reg. 39600 (July 1, 2022) ("Superseding Rule").  The Superseding Rule—including, as relevant here, the percentage standard formula it adopted—was challenged in *Sinclair Wyoming Refining Co., LLC v. EPA*, 101 F.4th 871 (D.C. Cir. 2024).  Refiners argued EPA should not include projected small refinery exemptions in the formula.  *Sinclair Wyo. v. EPA*, No. 22-1210, Pet. Br. (ECF 2017798) at 22-27.  And Biofuel groups—the exact same two organizations who are petitioners here—intervened on

4

EPA's behalf and *defended* the formula. *Sinclair Wyo. v. EPA*, No. 22-1210, Interven. Br. (ECF 2017770) at 14-15. At no point did Biofuel intervenors assert in that litigation that they believed the percentage standard formula had *not* been reopened. *Id*. Moreover, at no point in that litigation did Biofuel intervenors suggest that EPA erred by not also adjusting the formula to address small refinery exemptions that had been granted too late to be accounted for in percentage standard formulas in *previous* years. *Id*. And this Court ultimately upheld the formula. *Sinclair Wyoming*, 101 F.4th at 890-893.

Notably, since the issuance of both the 2020 Rule and the Superseding Rule, EPA's authority to set annual volumes has changed. Prior to 2023, Congress set the specific volumes of renewable fuel that must be incorporated into transportation fuel. 42 U.S.C. § 7545(o)(2)(B)(i). But *after* 2022, Congress required *EPA* to set the annual volumes itself based on a number of statutory factors that EPA has discretion to weigh as it sees fit. *Id*. § 7545(o)(2)(B)(ii); *Ctr. for Biological Diversity*, 141 F.4th 153, 171 (D.C. Cir. 2024).

Since the issuance of the Superseding Rule, EPA also has used its newly available statutory authority to set volumes and then apply the percentage standard formula from the Superseding Rule to set the annual percentage standards for 2023, 2024, and 2025. 88 Fed. Reg. 44468 (July 12, 2023). And, this Court has upheld the volumes and percentage standards for 2023, 2024, and 2025. *Ctr. for*

*Biological Diversity v. EPA*, 141 F.4th at 194.  EPA then proposed to set volumes

using its newly available authority for 2026 and 2027, and proposed to apply the

percentage standard formula from the Superseding Rule in a notice of proposed

rulemaking for 2026 and 2027.  90 Fed. Reg. 25784 (June 17, 2025).

In August of this year, EPA issued decisions on small refinery exemption

petitions from 2016 through 2024.  90 Fed. Reg. 41829 (Aug. 27, 2025).  The

decisions were the result of both this Court and the Fifth Circuit rejecting EPA's

prior methodology used to determine whether small refineries are entitled to

exemptions, and the Supreme Court determining that this Court was the only court

to have had venue for such a determination, *Sinclair Refin. Co. LLC v. EPA*, 114

F.4th 693 (D.C. Cir. 2024); *Calumet Shreveport Refin., LLC v. EPA*, 86 F.4th 1121

(5th Cir. 2023) *vacated* 145 S. Ct. 1735 (2025).

Although EPA is required to consider both "a review of the implementation

of the program" and "the expected annual rate of future commercial production of

renewable fuels" when setting the annual volumes, EPA had not factored the newly

available RINs from the August 2025 small refinery exemption decisions into its

analysis of the appropriate volumes of renewable fuel to set for 2026 and 2027.  42

U.S.C. § 7545(o)(2)(B)(ii); 90 Fed. Reg. 25784 (June 17, 2025).  Because EPA

was only partially through the rulemaking setting volumes for those years, EPA

issued a supplemental notice of proposed rulemaking to address the impact the

newly available 2023 and 2024 RINs, as well as newly projected 2025 RINs.  90

Fed. Reg. 45007 (Sept. 18, 2025).

Notably, EPA did not consider addressing volumes missed as a result of

small refinery exemptions granted for compliance years 2016 through 2022.  *See*

*generally*, 90 Fed. Reg. 45007 (Sept. 18, 2025).  Nor did EPA propose to

permanently amend the percentage standard formula to address late-granted small

refinery exemptions as part of any purportedly mandatory obligation to "ensure"

past volumes are met.  *Id*.  EPA simply proposed considering the 2023 through

2025 RINs that are newly available or newly projected as a result of the August

small refinery exemption decisions as one of the multitude of factors it considers

when exercising its discretion to set the annual volumes under its recently available

statutory authority.

## ARGUMENT

At the outset, this Court should not put this matter back in abeyance because

it is moot.  *See* EPA Br. (ECF 2112942) at 12-17.  Instead, the case should simply

be dismissed.

But even if Petitioners' challenge presented a live controversy, this case still

should not be put in abeyance for the 2026-2027 rulemaking.  Petitioners' motion

to place this matter *back* in abeyance demonstrates how tenuously tethered

Petitioners' arguments are to the 2020 Rule at issue in this litigation, and how

inappropriate this matter is for resolution.  Petitioners' *sole* hook for challenging

the 2020 rule is the percentage standard formula, and Petitioners claim that EPA

has a mandatory obligation to true up *past* missed volumes using that formula.  But

as explained in EPA's brief, this is simply not the case.  EPA Br. 23-36.

Moreover, EPA did *not* agree to true up past volumes in the supplemental notice

EPA issued for the 2026-2027 volumes.

Under the statutory authority Congress gave EPA to set volumes after 2022,

EPA has specific authority to set volumes by considering a number of criteria,

including "a review of the implementation of the program" over prior years and

also "the expected annual rate of future commercial production of renewable fuels,

including advanced biofuels in each category" and ultimately using its discretion to

set the volumes in light of that criteria.  42 U.S.C. § 7545(o)(2)(B)(ii); *Ctr. for*

*Biological Diversity*, 141 F.4th at 171.  Notably, that statutory authority was not at

issue in the 2020 Rule.  *See generally*, 85 Fed. Reg. 7016 (Feb. 6, 2020).

Moreover, the specific statutory authority on which Petitioners attempt to

hook their claim that EPA has a *mandatory* obligation to retroactively increase past

renewable fuel obligations to account for small refinery exemptions is 42 U.S.C.

§ 7545(o)(3).  That authority is not at issue in the 2026-2027 supplemental notice.

90 Fed. Reg. 45007 (Sept. 18, 2025).

Thus, the 2026-2027 rulemaking relies on a different statutory authority to account for the impact of RINs from small refinery exemptions for 2023 through 2025—well after the 2020 Rule—on volumes EPA set in years 2026 and 2027—even longer after the 2020 Rule.  Nothing considered in the 2026-2027 rulemaking was or even *could have been* considered in the 2020 Rule.  Although they tangentially relate to the same topic, they simply do not overlap enough to warrant putting this case back in abeyance at this extremely late stage in this litigation.

Accordingly, EPA respectfully requests the motion for abeyance be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' motion to put this matter in abeyance.

September 25, 2025

Of Counsel:

ROSEMARY KABAN
*Attorney*
U.S. ENVIRONMENTAL
PROTECTION AGENCY

Respectfully submitted,

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

 */s/ Kimere J. Kimball*
KIMERE J. KIMBALL
*Trial Attorney*
U.S. Department of Justice
Env't & Natural Resources Div.
P.O. Box 7611
Washington, DC 20044
(202) 514-2285 (Kimball)
Kimere.Kimball@usdoj.gov

10

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 1975 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Kimere J. Kimball*
KIMERE J. KIMBALL

*Counsel for Respondents*