**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 30, 2025**

No. 20-1107

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CLEAN FUELS ALLIANCE AMERICA,

*Petitioner*,

v.

ENVIRONMENTAL PROTECTION AGENCY AND LEE M. ZELDIN,

*Respondents*.

On Petition for Review of Final Agency Action
of the Environmental Protection Agency

### PETITIONERS' REPLY IN SUPPORT OF
### THEIR MOTION FOR ABEYANCE

Bryan Killian
Douglas A. Hastings
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
(202) 739-3000
bryan.killian@morganlewis.com

*Counsel for Clean Fuels Alliance America*

David M. Lehn
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
(202) 237-2727
dlehn@bsfllp.com

*Counsel for Growth Energy*

September 26, 2025

**ARGUMENT**

Petitioners moved to hold this case in abeyance in light of the combination of two recent EPA actions: its decision to grant 140 SREs for 2018-2023, while returning only expired RINs for the 2018-2022 SREs; and its supplemental "Set 2" proposal to increase the 2026-2027 RFS percentage standards to account for SREs granted for 2023-2025.  Petitioners proposed the abeyance because, although they cannot moot the claim entirely, they would practically satisfy petitioners' interests enough that petitioners would no longer need to pursue this claim.  EPA and intervenors do not even address that rationale in their oppositions.  The motion should be granted for that reason.

Rather than address petitioners' reasons for abeyance, EPA and intervenors rely on false or misleading statements about petitioners' claim, the record, and petitioners' motive for seeking the abeyance.

A.    EPA states that the 2022 Rule "supersed[ed]" the 2020 Rule.  EPA Opp.4.  EPA goes so far as to now label the 2022 Rule the "Superseding Rule," EPA Opp.4; *see* Intervenor Opp.2, amping up the rhetoric from its merits brief, which used the neutral term "2020-2022 Rule."  EPA's description is materially incorrect.  The 2022 Rule superseded the *percentage standards* that were established by the 2020 Rule.  But the 2022 Rule did not supersede the target of petitioners' claim, namely, the *policy adopted in the 2020 Rule of refusing* to make

1

up past retroactive SREs when establishing percentage standards *or the formula* embodying that policy that was codified in EPA's regulations.

In the 2020 Rule, EPA reconsidered its policy on retroactive SREs. It decided that, henceforth, it would increase the standards to account for the retroactive SREs it projected it would grant for that compliance year but not for the retroactive SREs it had granted for prior years. JA035:3-JA036:2; JA080-81. That is, EPA adopted a *rule*—a binding statement of generally applicable policy—to govern its treatment of past retroactive SREs in all future RFS annual standard-settings. 5 U.S.C. §551(4), (13); *see National Treasury Employees Union v. Vought*, 149 F.4th 762, 787 (D.C. Cir. 2025). And through the 2020 Rule, EPA codified that policy by amending the regulation that defines the formula EPA uses to compute the percentage standards annually. As amended by the 2020 Rule, the equation subtracts from the denominator the fuel associated with the SREs granted or projected to be granted for the same year but includes no adjustment for SREs granted for any prior year. *See* 40 C.F.R. §80.1405(c) (2021). No other RFS regulation calls for an adjustment for past retroactive SREs, either.

The 2022 Rule did not supersede the 2020 Rule's policy toward retroactive SREs *at all*. The 2022 Rule expressly "reaffirm[ed]" both parts of the policy adopted and codified through the 2020 Rule—both that EPA would increase the percentage standards to account for SREs granted or projected to be granted *for*

2

*that year* but would not account for SREs granted *for any prior year*. See JA126:1-128:1; JA114, JA116-117. Consequently, the 2022 Rule did not change the codified standards formula. *See* 40 C.F.R. §80.1405(c) (2023). Nowhere did the 2022 Rule state that it was "superseding" or withdrawing the 2020 Rule. Rather, the *sole* action that the 2022 Rule took toward 2020 was to use EPA's never-before-used "reset" power to "modify" the specific percentage standards that the 2020 Rule had set. JA124-125.

B.  EPA asserts that "Petitioners' *sole* hook for challenging the 2020 rule is the percentage standard formula, and Petitioners claim that EPA has a mandatory obligation to true up past missed volumes using that formula." EPA Opp.7-8. The first part of EPA's assertion is false and the second part is materially incomplete and thus misleading.

Regarding the first part, the percentage standards set by the 2020 Rule are *not* petitioners' "sole hook." As petitioners have stated, they challenge the general policy of refusing to adjust annual percentage standards to account for past SREs, which the 2020 Rule adopted and codified in the regulation defining the standards formula. *See, e.g.*, Pet. Br.37-38; Pet. Reply 2-3. Because that policy and embodying regulation were never withdrawn or modified in any relevant respect, this case remains live. *See* Pet. Br.36-39; Pet. Reply 2-6.

3

Regarding the second part, petitioners' claim does not necessarily involve a true-up. As petitioners explained, the effect of past retroactive SREs on RFS compliance can take two forms, depending on timing. *See* Pet. Reply 14-16. And that in turn affects whether a true-up will be needed. Further, to the extent a true-up would be called for, it would be within EPA's and this Court's precedents.

In the first scenario, the past SREs have inflated the amount of RINs that are available for compliance in the year for which EPA is setting standards. In this scenario, those RINs will reduce the volume of renewable fuel that the to-be-set standards will actually require, one for one. Raising the upcoming standards to account for the available RINs from the past SREs does not involve a true-up because it would not be offsetting a *past* renewable-fuel shortfall but rather preventing a *future* shortfall.

This exact scenario is the problem that EPA would address through its recent supplemental Set 2 proposal regarding the 2026-2027 standards. In that notice, EPA explained that because the SREs recently granted for 2023-2025 (i.e., past retroactive SREs) would make billions of additional RINs available for compliance, those SREs would have the effect of reducing the amount of renewable fuel that the previously proposed 2026-2027 percentage standards would actually require obligated parties to use. *See* Mot. for Abeyance at 7-9; 90 Fed. Reg. 45,007, 45,010:1-3 (Sept. 18, 2025) (SREs granted for 2023-2025 will

4

"directly increase the supply of RINs available for other obligated parties to use for compliance. As a result, obligated parties will be able to use the RFS program's carryover RIN provisions to roll these RINs forward to the 2025 compliance year and beyond."). To prevent that, EPA proposed to raise the 2026-2027 standards to account for the 2023-2025 SREs as an exercise of its discretion in "setting" volume requirements for years after 2022.

That is precisely what petitioners claim that EPA is *required* to do *annually* pursuant to its distinct statutory "ensure" duty: to adjust the percentage standards being set for any given year (not just 2020) whenever there will be RINs available for compliance in that year (or another open compliance year) because of SREs that EPA granted *for* past years but never accounted for in any prior year's percentage standards. Pet. Br. 28-32; Pet. Reply 13-21. And petitioners claim that even if there were no "ensure" duty, the duty of reasoned decisionmaking requires EPA to make the same adjustment, lest it knowingly set ineffectual standards by blinding itself to obvious circumstances regarding how the standards it is setting will operate. Pet. Br. 33-34; Pet. Reply 21. This remediation is not a "true-up" in any sense of the word, and notably EPA did not treat this remedy as a true-up when it proposed doing the same thing in its supplemental Set 2 proposal for the 2026-2027 standards—as EPA's opposition to the abeyance motion acknowledges, EPA Opp.8.

5

In the second scenario, the past SREs have already created a renewable-fuel shortfall in a prior year (because the exempted refineries never used the renewable fuel or because they did and applied the resulting RINs to comply with an intervening year's obligations) and therefore the associated RINs will not be available for compliance in the year for which EPA is establishing standards. Currently, this is the case for SREs granted for 2013-2022. *See* 90 Fed. Reg. at 45,011:1 ("2023 and newer vintage RINs remain valid for RFS compliance and have value within the RIN market. In contrast, 2022 and older RINs are expired and thus cannot be used for compliance with 2024 or later RFS obligations."). In this scenario, petitioners claim that EPA's "ensure" duty requires it to increase future standards to make up for that past shortfall. To that extent, petitioners do seek a true-up mechanism. But this Court has already rejected the proposition that EPA is statutorily precluded from having a true-up mechanism, *Sinclair Wyoming Refining Co. LLC v. EPA*, 101 F.4th 871, 898 (D.C. Cir. 2024), and the true-up mechanism that petitioners seek is the type of true-up mechanism that EPA and this Court have repeatedly found to be within the scope of EPA's "ensure" mandate, *see* Pet. Reply 15-18.

C. EPA states that in the litigation over the 2022 Rule, petitioners here "intervened on EPA's behalf and defended the formula." EPA Opp.4-5; *see also* Intervenor Opp.2. That is misleading. Petitioners intervened in that case to defend

6

the formula insofar as it accounts for *projected* retroactive SREs, but did not defend the formula insofar as it fails to account for *past* SREs. *See* Br. of Biofuel Intervenors 14-15, ECF #2017770, *Sinclair Wyoming Refining Co. v. EPA*, No. 22-1210 (Sept. 19, 2023).

  D. EPA states that "at no point" in the 2022 Rule litigation did petitioners here "suggest that EPA erred by not also adjusting the formula to address [past] small refinery exemptions." EPA Opp.5. That is true but irrelevant. As petitioners have explained, this Court has recognized that a later rule affirming the position of an earlier rule does not moot the challenge to the earlier rule, even if the challenge applies equally to the later rule—and even if the two rules are more closely related than the 2020 and 2022 Rules are, like interim and final rules. *See* Pet. Br.39; Pet. Reply 3-5. And petitioners were within their rights to rely on the fact that this case was being held in abeyance, which would allow them to resume their challenge here upon the conclusion of the 2022 Rule litigation.

  E. EPA suggests that because annual volume requirements after year 2022 are established by EPA under its Set power rather than by the statutory volume table, the problem at issue here has gone away. EPA Opp.5-6. That suggestion is mistaken. EPA still must define annual volume requirements and still must annually apply its formula to convert them to percentage standards. *See* 42 U.S.C. §7545(*o*)(2)(B)(ii); 40 C.F.R. §80.1405(c); *Center for Biological*

7

*Diversity v. EPA*, 141 F.4th 153, 163-166 (D.C. Cir. 2025); Intervenor Opp.7. Further, EPA's "core mandate" to annual set percentage standards that are reasonably designed to "ensure" that the volume requirements will be "met" continues to apply after 2022. Pet. Reply 8-10; *Wynnewood Refining Co., LLC v. EPA*, 77 F.4th 767, 779 (D.C. Cir. 2023). EPA recognized as much when it reaffirmed the 2020 Rule's formula in the 2022 Rule—EPA said that by accounting for projected retroactive SREs, the formula "would in fact better 'ensure' that the volumes are met" if EPA "grant[s] SREs for some future compliance year," i.e., for compliance years *after 2022*. JA128:1; Pet. Reply 10. EPA also recognized as much when it explained that it would continue to use percentage standards after 2022. JA138:2; Pet. Reply 11.

F. EPA notes that the reallocation in the supplemental Set 2 proposal "relies on a different statutory authority to account for the impact of RINs" from past retroactive SREs than the statutory authority invoked by petitioners here. EPA Opp.9. But petitioners already acknowledged that in their motion; it does not rebut their request. Mot. for Abeyance at 9-10; *cf.* Intervenor Opp.5-6.

G. Intervenors assert: "Petitioners' concerns plainly lie not with the initial 2020 RFS rule which they challenged, but rather with the outcome of actions occurring well after the promulgation of that rule and other actions that do not yet constitute final agency action." Intervenor Opp.3-4. As apparent evidence of that,

8

Intervenors quote petitioners' prior statement that if the Court rules for petitioners here, "'EPA will have to conform its policy to that ruling and apply its revised policy in *future* standard-settings.'"  Intervenor Opp.4 n.1 (quoting Pet. Reply 4-5). But again, petitioners challenge a binding statement of generally applicable policy—i.e., a rule—which was adopted in the 2020 Rule and codified at 40 C.F.R. §80.1405(c), governing (and continuing to govern) how EPA sets percentage standards every year, going forward.  Accordingly, petitioners concern is with the consequences of that rule when applied in annual standard-settings.  If successful, plaintiffs' claim would require EPA to alter that policy, leading to different outcomes when applied in future standard-settings.  In no sense are petitioners challenging or complaining about any proposed or yet-to-be proposed EPA action.

      H.    Intervenors note: "Petitioners do not show how either of the cited actions (recent EPA determinations regarding small refinery exemption requests and a *proposed* rule to set RFS for 2026 and 2027) address the 'policy' that was allegedly contained in the challenged 2020 RFS rule." Intervenor Opp. 4.  But that is expressly not the basis for petitioners' motion.  Petitioners explained that the recent SRE action and the proposed reallocation for 2026-2027 (if finalized and upheld) may largely eliminate the need to deal with past retroactive SREs and that the proposed reallocation would expressly confirm the programmatic logic underlying petitioners' claim here.  *See* Mot. for Abeyance at 9-11.

9

I.      Intervenors state: "The fact that EPA may have made other determinations on small refinery exemptions or that EPA may take additional actions for future calendar years cannot impact the volume of renewable fuel used in 2020 or prior years."  Intervenor Opp.5.  That is correct but irrelevant.  Again, petitioners do not challenge the 2020 percentage standards themselves and obviously do not somehow seek to magically increase the amount of renewable fuel used in 2020 or an earlier year.  Petitioners challenge the generally applicable, codified policy governing how EPA sets percentage standards every year, going forward.

J.      Intervenors speculate that petitioners' abeyance request reflects a desire to "wait and see whether they can get a better outcome in the 2026-2027 rule."  Intervenor Opp.6.  Not so.  Petitioners' claim *here* would yield the *best* outcome for petitioners and their industry.  By returning expired RINs for the 2018-2022 SREs and by reallocating the 2023-2025 SREs, EPA's recent actions (if finalized and upheld) would give petitioners *less* than the renewable-fuel makeup they hope to achieve through this lawsuit.  As the motion acknowledged, these recent actions, "together, … would preempt much (*though not all*) of the need for the reallocation of past SREs to date that plaintiffs seek through this lawsuit."  Mot. for Abeyance at 1 (emphasis added).  And unlike the claim here, the discretionary power invoked by the supplemental Set 2 proposal would not

10

guarantee that EPA would reallocate any past retroactive SREs that are granted in the future. Petitioners proposed the abeyance because the new actions could affect the basis for this claim or practically satisfy them enough that they would no longer need to pursue this claim.

K.     Finally, intervenors contend that "there is no logical endpoint to which an abeyance should end because EPA is required to promulgate calendar year applicable volume requirements *ad infinitum*" and "additional future actions could conceivably be interpreted to 'endorse the programmatic logic underlying petitioners' claim' respecting the 2020 RFS." Intervenor Opp.6-7. It is not that simple. The recent supplemental Set 2 proposal is the first time that EPA has proposed to reallocate past-year retroactive SREs, though it proposes to do so solely for the 2023-2025 SREs as a matter of discretion. If EPA were to decide to routinely reallocate past-year retroactive SREs when setting all future standards, that would largely satisfy petitioners' interest and obviate the need for this litigation.

## CONCLUSION

The Court should hold this case in abeyance pending finalization of the Set 2 Rule, and direct the parties to file motions to govern the proceedings within 30 days of the publication of the final Set 2 Rule in the Federal Register.

11

|  | Respectfully submitted, |
|---|---|
| /s/ Bryan Killian | /s/ David M. Lehn |
| Bryan Killian | David M. Lehn |
| Douglas A. Hastings | BOIES SCHILLER FLEXNER LLP |
| MORGAN, LEWIS & BOCKIUS LLP | 1401 New York Avenue NW |
| 1111 Pennsylvania Avenue NW | Washington, DC 20005 |
| Washington, DC 20004 | (202) 237-2727 |
| (202) 739-3000 | dlehn@bsfllp.com |
| bryan.killian@morganlewis.com |  |
|  | *Counsel for Growth Energy* |
| *Counsel for Clean Fuels Alliance America* |  |

September 26, 2025

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,599 words, excluding the exempted portions, as provided in Federal Rule of Appellate Procedure 32(f). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(a)(5)-(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ David M. Lehn
DAVID M. LEHN

September 26, 2025

## CERTIFICATE OF SERVICE

I certify that on September 26, 2025, I filed a copy of this brief using the Court's case management electronic case filing system, which will automatically serve notice of the filing on registered users of that system.

/s/ David M. Lehn
DAVID M. LEHN

September 26, 2025